UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MATTHEW DALEY <br> 3913 NANCY LANE <br> COLLEGEVILLE, PA 19426 <br><br> *Plaintiff* <br> v. <br><br> NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK) <br> 60 MASSACHUSETTS AVENUE <br> WASHINGTON, D.C. 20002 <br><br> *Defendant* | CIVIL ACTION NO.: <br><br><br> JURY TRIAL DEMANDED |

## COMPLAINT

1. Matthew Daley is a resident of Pennsylvania living at the captioned address.

2. The National Railroad Passenger Corporation, otherwise known as Amtrak, is a corporation under the laws of the District of Columbia engaged in interstate commerce in Pennsylvania and the other States. Its corporate headquarters is located at 60 Massachusetts Avenue, Washington, D.C. 20002.

3. All the acts alleged to have been done or not to have been done by the carrier's agents, servants, workmen and/or employees are imputed to the carrier as a part of the course and scope of employment for and on behalf of the carrier.

4. At all time material hereto, Mr. Daley was employed by Defendant.

5. Matthew Daley is an employee of Amtrak who was working at and injured at the Frazer Railyard, 32 Sproul Road, Malvern, Pennsylvania.

6. On July 14, 2020, at approximately 4:00 am, Plaintiff was at the Frazer storage track in the process of parking his ballast regulator when a machine on the east side of his machine crashed into Plaintiff's machine.

7. Plaintiff sustained injury to his lower back.

8. His immediate Supervisor was not at the work location, and he asked his Foreman to call his supervisor to report his injury.

9. When his supervisor arrived on scene and was told what happened his supervisor said to Plaintiff, "you know you are a piece of shit, right?".

10. The supervisor repeated this insult several more times, getting louder and closer to Plaintiff's personal space.

11. Plaintiff asked him to stop but he continued to verbally assault Plaintiff.

12. At some point after the verbal attack, Plaintiff said to his supervisor that he did not want medical attention but that he did want it on record in case Plaintiff developed any pain later in the day.

13. The Supervisor yelled at him…"No, you are going to the hospital, and now because of you, every single person in this gang will be getting drug tested.  You're going to do that to these guys?"  He then stated to Plaintiff that he was going to get the gentleman operating the machine that hit plaintiff fired and asked…"Do you really want to go that route?"

14. Another employee, Mr. Wayne Sewell, came up to them and said to the supervisor that he cannot talk to Plaintiff that way.  He cannot threaten nor bully Plaintiff into not reporting an injury.

15. The supervisor started to get loud and very hostile towards Mr. Sewell.

16. Plaintiff said to his supervisor, out of fear for his job, that he would not report the injury.

17. Around noon on that Tuesday of the injury event, Plaintiff's supervisor called him to say that Mr. Sewell called that Amtrak Police and told them what transpired.

18.  Plaintiff's supervisor told Mr. Daley that he had to make a statement.

19. Out of fear, he asked the supervisor what he should say. The supervisor texted him a message of what he should say from his personal cellphone. Plaintiff kept his statement like what his supervisor wanted him to write. Plaintiff wrote what he was told and submitted it to his Union Representative.

20. Plaintiff's supervisor then called Plaintiff and asked him to text him the statement and Plaintiff told him no, so the supervisor asked him to tell him what his statement said.

21. Later, a few hours before the start of the shift Tuesday night, his Supervisor called Mr. Daley again saying he did not want him to leave the gang and that he likes him and really wants him to stay.

22. That night, Mr. Daley left work at midnight because he was tired from the early phone calls, stressed out by the entire situation, and struggling with a tight back that started when he woke up Tuesday afternoon.

23. Wednesday night, at the job briefing, the Supervisor called Mr. Daley's name out loud, and in front of the entire gang, told him I have to go talk to "those guys down there."

24. Mr. Daley had to go make another statement to two managers, his Union Rep, and the Supervisor's Union Rep. Mr. Daley was too afraid to tell them what really happened because he feared the Supervisor would retaliate outside of work. His supervisor was also physically only 200 yards away from where Mr. Daley had to make his statement.

25. After Mr. Daley made his statement, similar to the one his supervisor texted him, Mr. Daley walked back to where the job briefing was held.

26. The Supervisor was still standing there, and they had a private conversation. Out of fear, Mr. Daley told him that he did not tell the managers and representatives anything about

him intimidating him and trying to pin the gang against him. After that, Mr. Daley went to work as usual.

27. Thursday night, at the job briefing, the Supervisor told the gang that "they" were making him (the supervisor) go somewhere else, that he would not be working with them anymore, and that we would have a new supervisor on Monday. This entire situation has been causing Mr. Daley so much anxiety because he feels like the supervisor has been trying to get the gang to be mad at Mr. Daley since the crash.

28. Friday, Mr. Daley called his Union Representative to talk. This is when his Union Representative told him that his Supervisor told him and his Union Representative that he had a witness who told him that Mr. Daley was not on the machine when the collision happened.

29. In addition to the physical injuries, Mr. Daley suffered mental and emotional injuries for which he continues to suffer and treat. He cannot sleep, he has no appetite, his back is tight, and he is having panic attacks over this situation.

**WHEREFORE,** Matthew Daley seeks all remedies available under the law, including, but not limited to, lost pay with interest, compensating damages, and special damages such as litigation costs and attorney fees.

By his attorneys,

By    */s/ James M. Duckworth*

JAMES M. DUCKWORTH
**KELLER & GOGGIN, P.C.**
Suite 1108
1420 Walnut Street
Philadelphia, PA 19102
(215) 735-8780
(215) 735-5126
jduckworth@keller-goggin.com